BETSEY DUTCHER, as Administratrix, etc., of WILLIAM DUTCHER, Deceased, Respondent, v. HORATIO S. DUTCHER, Appellant.

*Executor and administrator — agreement made before his appointment — an agreement to take all the personal property of an intestate and support his widow, the administratrix — conversion.*

In an action brought by an administratrix to recover damages resulting from the alleged conversion of personal property belonging to her intestate, it appeared that the plaintiff was the widow of the intestate; that he left three sons and two daughters; that before the widow became administratrix an agreement was made between her and her sons, by which all the personal estate of the intestate should be taken by the defendant, one of the sons, and that in consideration of this transfer the son should maintain the widow at his own home during the term of her natural life, and that he should pay the funeral expenses of the intestate and the debts of the estate. The defendant offered to show, upon the trial of the action, that although the daughters did not join in making this agreement they subsequently ratified it, but no ratification by them was alleged in the answer. The evidence was rejected.

*Held,* that the agreement could not be enforced;

That the widow, before her appointment as administratrix, had no title to her husband's estate;

That the defendant was aware of the facts and circumstances relating to his father's estate, and must be presumed to have known that the widow could not bind the daughters who were not present when the agreement was made;

That as the defendant had not in good faith acquired the legal title to the property, his refusal to surrender it on demand was a conversion.

APPEAL by the defendant, Horatio S. Dutcher, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Oswego on the 24th day of October, 1894, upon the verdict of a jury rendered after a trial at the Oswego Circuit, and also from an order made on the 19th day of October, 1894, and entered in said clerk's office, denying the defendant's motion for a new trial made on the minutes.

The plaintiff's complaint alleges that William Dutcher, at the time of his death, was the owner and in possession of the articles of personal property mentioned in the complaint, and that they were of the value of $300, and that he died in the town of Constantia on the 6th day of March, 1893, and that on the 8th of February, 1894, Betsey Dutcher was appointed administratrix and qualified as such, and that on the 3d of March, 1894, she, as such

administratrix, demanded possession of all the property mentioned in the complaint, and the defendant refused to deliver the same, and, therefore, the plaintiff seeks to recover damages for the conversion of the same. The answer admits the death and the appointment and qualification of the plaintiff as administratrix. The jury rendered a verdict for the plaintiff of $240.

*O. M. Reilly*, for the appellant.

*Piper & Rice*, for the respondent.

HARDIN, P. J.:

In March, 1893, William Dutcher died, leaving him surviving his widow and five children, and on the 8th day of February, 1894, Betsey Dutcher, his widow, was appointed his administratrix and took upon herself the duties of such. After having made a demand of the personal property in the possession of the defendant at the time such demand and such refusal thereof were made, and which are particularly described in the complaint, she brought this action for conversion of the same. In the third paragraph of defendant's answer it is alleged that on the 6th of March, 1893, the plaintiff and defendant, " together with Wm. H. Dutcher and Washington N. Dutcher, who are brothers of this defendant, and sons of the said Wm. Dutcher, deceased, made and entered into an agreement, by the terms of which the plaintiff herein was to come and live with this defendant and to make her home with him, as she should live, and that defendant should support, maintain and provide for said plaintiff at his said home and should pay all expenses and debts of said deceased, including funeral expenses of his said father, and in consideration of said agreement so made and entered into between the said plaintiff, Wm. H. Dutcher, Washington N. Dutcher and this defendant, all of the personal property and effects of the said Wm. Dutcher, deceased, were to be delivered over to this defendant, and were to be his absolutely." The answer also alleges that pursuant to the agreement the property described in the answer was delivered to the defendant. The answer further alleges that the plaintiff, Wm. H. Dutcher and Washington N. Dutcher were, at the time of the contract " the only heirs at law and next of kin of the said Wm. Dutcher,

deceased, and the only creditors and persons interested in said estate." It is also alleged that the plaintiff, pursuant to the arrangement, on or about the 8th of March, 1893, went to live with the defendant at his home and was supported and provided for by him from the 8th of March, 1893, up to the 30th of December, 1893, when the plaintiff herein, of her own account and without any fault on the part of this defendant, left his said home and has not since been there.

During the trial it appeared that the deceased left three sons and two daughters, in all five children. That at the time of the alleged agreement the sisters were not present. There was no averment in the answer that the sisters took part in the agreement, nor was it alleged that they ratified the agreement; however, upon the trial, it was claimed that after the agreement was made the two sisters ratified the same. It is to be observed that the defendant in his offer stated in effect that at the time the agreement was entered into between the three persons and the widow, the sisters did not take part therein, as it is alleged that they subsequently ratified the agreement.

In the offer the defendant claimed to show that all the personal estate which was left by William Dutcher should be taken by the defendant, and that in consideration of that he should maintain and support the plaintiff at his home during the term of her natural life, and that he should also pay the funeral expenses and whatever expenses there were or debts against the estate; and that he was to have all of the property for supporting the plaintiff during her natural life and paying the funeral expenses and debts, and that the agreement was by parol. The evidence was objected to on sundry grounds, among others that it was immaterial and incompetent and inadmissible under the pleadings. The offer was rejected and the evidence mentioned therein excluded, and the defendant took an exception.

At the time of the alleged agreement the plaintiff was not administratrix of the estate. It is claimed, however, in behalf of the defendant that, as she was subsequently appointed, the agreement which she made before her appointment was binding upon her as administratrix. We think the offer was not in accordance with the allegations of the answer.

In *Smith* v. *Robinson* (30 Hun, 273), after discussing the rule which is to the effect that letters of administration when granted have relation to the time of the death of the intestate and legalize all the intermediate acts of the administrators, it was said by BARKER, J., at page 273, that the administrator "is not permitted to question the validity of his own agreements and contracts, which he may have entered into in good faith prior to his appointment, concerning the property and debts of the intestate." And he adds: "Without the protection of this rule, of law, great wrong and injustice would at times be done to innocent persons trading and dealing with an individual in the actual possession of the assets belonging to the estate of the deceased person." In the case in hand the defendant was aware of the facts and circumstances relating to his father's estate, and must be presumed to have known that the widow had no legal right to bind the heirs at law who were not present at the time of the alleged agreement, and presumptively he knew that the widow, before having been appointed administratrix, had no legal title to the property. It is difficult, therefore, to say, upon the evidence disclosed at the trial or upon the circumstances in addition thereto embraced in the offer, that the defendant was acting in good faith, or that the widow had the full right to sell or transfer the property left by his deceased father. The legal title to the property came into the possession of the plaintiff and she received letters of administration, and when she made a demand for the possession of the property she was acting in behalf of all the heirs at law as well as herself. Inasmuch as the defendant had not acquired, in good faith, the legal title to the property, he wrongfully refused to deliver possession of the same when a demand was properly made by the representative of his father's estate, to whom the legal title passed upon the appointment of the widow as administratrix.

The case in hand differs from *Allen* v. *Eighmie* (9 Hun, 201), as in that case the defendant was the only next of kin of the decedent and plaintiff was his widow, and the agreement entered into between them was such an one as contemplated a payment by the defendant of all the debts and demands against the estate, and the court, therefore, held that the agreement made before the plaintiff's appointment was binding and was properly pleaded in the answer to the complaint, which sought to recover moneys that had come to the hands

of the defendant. In the case in hand the sale of the property does not seem to have been made in terms, but it was rather a personal agreement attempted to be entered into by the widow with one of the sons of the deceased, looking to her own personal advantage rather than to the adjustment of the estate in the usual formal mode.

In *Bellinger* v. *Ford* (21 Barb. 314), after stating that the general rule that letters testamentary when issued relate back to the death of the testator and legalize all intermediate acts, BOCKES, J., said: " But this must be understood to cover those acts only which might have been done had he been executor at the time, and since the Revised Statutes the law of relation is limited still-more in its application."

In *Deobold* v. *Oppermann* (111 N. Y. 539) RUGER, Ch. J., said: " We conceive it to be beyond the power of an executor or administrator to bind the estate they represent to any use of its funds, by contract with third persons having knowledge of the character of the property transferred, except in the ordinary and usual course of administration of the trust, and in furtherance of its objects. * * * It would be contrary to the policy of the law to allow an administrator, at the outset of his administration, by contract, to place the funds of the estate beyond the reach of the court and irreclaimable until after all the duties of administration have been performed by the administrator." It is apparent from the proofs given and from the proposed offer, that the plaintiff, administratrix, was not " the only person entitled to the beneficial ownership of the intestate's property," and she did not hold the estate exclusively in her own right. The case, therefore, does not fall within the rule mentioned in *Blood* v. *Kane* (130 N. Y. 514). (See, also, *Matter of Mullon*, 145 id. 104 ; 39 N. E. Rep. 822.)

We think the exceptions taken at the trial to the rulings of the court in respect to the offer do not present errors requiring us to disturb the verdict. It is suggested in behalf of the appellant that the property in question belonged to the widow under the statute of 1842, and that she had a perfect right to do with it as she saw fit, and that the same was exempt from the creditors of her husband. We do not find that question was raised at the trial. We, therefore,

find no occasion to express an opinion upon that view of the case. The foregoing views lead to the conclusion that the order denying the motion for a new trial and the judgment should be sustained.

MARTIN and MERWIN, JJ., concurred.

Judgment and order affirmed, with costs.