Argued January 19, decided Feb. 15; rehearing denied April 12, 1910.

# MURRAY'S ESTATE.

[107 Pac. 19.]

EXECUTORS AND ADMINISTRATORS—ACCOUNTING—SCOPE.

1. In a proceeding by an administrator *de bonis non* against the sureties on the bond of the former administratrix for an accounting of the property received by her, where the parties acquiesced in the theory of the trial that, though a distribution was prematurely made, it was made to the heir, and therefore the sureties should be held only for the amount necessary to pay the debts and expenses of administration, there was a waiver by the administrator of an accounting of the whole estate.

EXECUTORS AND ADMINISTRATORS—PRESERVATION OF ESTATE—DUTY OF HEIR—COMPENSATION.

2. It was proper for the heir of a decedent to anticipate the administration and do what was necessary to preserve the estate, and she was entitled to compensation out of the estate for expense so incurred, her subsequent appointment as administratrix relating back to decedent's death and legalizing acts done for the benefit of the estate.

EXECUTORS AND ADMINISTRATORS—LEASE OF PERSONALTY.

3. A lease of personalty made by an heir before her appointment as administratrix, was void as against the estate, not being for its benefit.

WORK AND LABOR—PART PERFORMANCE OF CONTRACT—RECOVERY.

4. Where one performs service for another on a special contract, and for any reason, except voluntary abandonment, fails to fully comply with his contract, he may recover the reasonable value of such service if it benefited the other party.

EXECUTORS AND ADMINISTRATORS—CLAIMS.

5. Though a lease of a horse belonging to an estate, made by the heir before her appointment as administratrix, was void as against the estate, not being for its benefit, the lessee in caring for the horse was not an intermeddler, and was entitled to compensation from the heir for such services; she being entitled to reimbursement from the estate.

EXECUTORS AND ADMINISTRATORS—CLAIMS—CONTRACTS OF ADMINISTRA· TOR—LIABILITY.

6. The rule that the claim of a creditor arising on the contract of the administrator is enforceable against him personally and not ordinarily against the estate, and, if a proper item of expense will be allowed to the administrator out of the estate, is subject to an exception in case of a claim for funeral expenses or care of live stock, or of the insolvency of the administrator, or his removal beyond the jurisdiction, in which case the creditor may be allowed to take the place of the administrator and be paid out of the estate to the same extent.

EXECUTORS AND ADMINISTRATORS—CLAIMS—PRESENTATION—FAILURE TO PRESENT—EFFECT. ·

7. Section 1159, B. & C. Comp., requiring claims to be presented to the administrator within six months from the publication of the notice to creditors, only postpones claims not presented within that time until the payment of those so presented.

EXECUTORS AND ADMINISTRATORS—CLAIMS.

8. Under Section 1217, B. & C. Comp., providing that the executor or administrator may retain in his hands in preference to any claim or charge against the estate the amount of his own compensation and the necessary expenses of administration, a liability on the administrator's own contract need not be presented to the estate at all by the creditor, being a preferred claim in favor of the administrator.

APPEAL AND ERROR—OBJECTIONS BELOW—NECESSITY.

9. In a proceeding by an administrator *de bonis non* against the sureties on the bond of the former administratrix for an accounting, the sureties could not on appeal for the first time contend that the proceeding was one at law, and that they were entitled to a jury trial.

EXECUTORS AND ADMINISTRATORS—ACCOUNTING—DECREE—CONTENTS—
    RELIEF.

10. In a proceeding by an administrator *de bonis non* against the sureties on the bond of the former administratrix to settle her account, it was error to direct a judgment against the sureties for the amount necessary to pay the debts of the estate; the probate court not having general equitable jurisdiction with power to grant full relief, but only such as relates to the administration of the estate.

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE EAKIN.

This is a proceeding by F. P. Talkington, as administrator *de bonis non,* against Ed. C. Herren and Mrs. M. E. Becker, formerly Mrs. M. E. Fraser, as sureties on the bond of the former administratrix, for an accounting.

William Murray died in Marion County, Oregon, August 21, 1903, leaving his widow, Emma Murray, as his only heir. Excepting a few accounts due him, the only property he owned at the time of his death was a valuable stallion and race horse, "Diablo," of the alleged value of $5,000. The horse required the constant care and attention of a keeper, and at the time Murray died was in the charge of Sam Casto. Immediately after the death of Murray, and while Casto was still in charge of the horse, viz., about August 26, 1903, the said Emma Murray leased him to Casto for a year. Under such lease, Casto continued in possession of the horse, furnishing stable room, feed and care for him until the 26th day of January, 1904, when Mrs. Murray took the horse from his possession. Casto thereupon commenced an action of

claim and delivery against Mrs. Murray, alleging his right to possession under his lease. Thereafter said Emma Murray applied to the county court of Marion County for letters of administration upon the estate of William Murray, deceased, and letters were issued to her on March 14, 1904; Ed. C. Herren and M. E. Becker being the sureties upon her undertaking as administratrix. Thereafter she answered in said replevin action, alleging title as administratrix to the horse, and repudiating her contract of lease with Casto on the ground that the contract was void, which resulted in a judgment in her favor. *Casto v. Murray*, 47 Or. 57 (81 Pac. 388, 883.) Afterwards Emma Murray sold the horse for $4,000, and he was shipped to California. The sale was approved by the county court, though no order had been made authorizing said sale. The only debts against the estate other than the expenses of the last illness of decedent and the funeral and administration expenses, which were all paid by Emma Murray, were the claim of Casto and the expense of closing the administration. On April 7, 1904, the administratrix gave due notice to creditors to present their claims against the estate. No semi-annual nor final accounts were filed by her, and in the month of September, 1904, she removed to California and died there on October 5, 1905. On October 30, 1905, F. P. Talkington was appointed administrator *de bonis non* of the estate of William Murray, deceased, and thereupon said Casto presented to him a claim for services and expenses in his care of Diablo from July, 1903, to January 26, 1904, in the sum of $620, which the administrator indorsed "Approved," and thereupon this proceeding was commenced in the county court to require Herren and Becker, as sureties, to account for the property of the estate coming into the hands of Emma Murray as administratrix.

By their answer Herren and Becker admit the allegations of the petition, except they deny that there are any

debts of the estate unpaid, and allege affirmatively that but one claim has been presented against the estate, and that by Sam Casto, amounting to $620, and that the same is fraudulent and void, and that he is estopped to claim the same, and for such estoppel set up the judgment in the case of *Casto* v. *Murray,* 47 Or. 57 (81 Pac. 388, 883), and allege that the claim was not presented within six months from the date of the notice to creditors, and that Casto had stated that Emma Murray had paid all the debts owing by William Murray, deceased, at the time of his death. For a statement of the account they allege:

"Emma Murray, administratrix, debtor to said estate, to sale of horse, Diablo, $4,000. Credit, to amount received by Emma Murray, as heir at law of William Murray, deceased, $4,000."

They also asked that a final hearing be had upon the said account, and that the same be allowed, and the claim of Casto disallowed; that the sureties be discharged and exonerated from further liability.

A reply was filed to this answer and final account, and the cause was tried in the county court upon which a decree was rendered disallowing the claim of Casto, dismissing the petition, and directing that the sureties give notice of the filing of the final account and close the estate. Talkington appealed to the circuit court, in which the decree of the county court was reversed, and the claim of Casto was approved in the sum of $511.71. It was adjudged that Talkington as administrator *de bonis non* is entitled to an accounting against the sureties of the former administratrix; that he be allowed the amount of said claim, together with the attorney's fees, costs, and expenses, and his commissions as administrator, and judgment was directed against the sureties accordingly.

Reversed.

For appellants there was a brief, with oral arguments by *Mr. John A. Carson* and *Mr. John Bayne.*

For respondents there was a brief, with oral arguments by *Mr. William M. Kaiser* and *Mr. L. H. McMahan.*

.   MR. JUSTICE EAKIN delivered the opinion of the court.

1. The form of this proceeding is questioned for the first time in this court. ' Counsel for the sureties contend that there can be no action on the undertaking of an administrator until there has been a settlement of the account of the former administrator, which is not disputed. But this is a proceeding in the county court for such settlement and is not an action on the bond. However, the issues have been made and trial had upon the suggestion in the answer that, although a distribution was prematurely made, it was made to the heir, and therefore the sureties should not be held for the whole of the property of the estate, but only for such amount as would be necessary to pay the debts and expenses of administration. This being acquiesced in by all the parties as well as the lower courts is a waiver by the administrator *de bonis non* of an accounting of the whole estate, the sureties having tendered an issue as to the amount and validity of the claim of Casto, for the purpose of determining whether there is any occasion for an accounting, and, if so, for what amount.

2. It was proper that Emma Murray as the heir of William Murray, deceased, care for the property of decedent, so far as necessary for its preservation, or cause it to be done, until the administrator was appointed. *Casto* v. *Murray,* 47 Or. 66 (81 Pac. 388, 883). And, if expense was incurred in the necessary care of the property before the appointment of the administrator, she was entitled to compensation therefor out of the estate. She was entitled to anticipate the administration and to do what was necessary to preserve the estate. *Casto* v. *Murray,* 47 Or. 57 (81 Pac. 388, 883) ; *Taylor* v. *Woburn,* 130 Mass. 494. The appointment relates back to the death of decedent, legalizing the acts done before her appointment

as administratrix, provided they were done for the benefit of the estate.   11 Am. & Eng. Enc. Law (2 ed.) 908; *Whitelock* v. *Bowery Savings Bank,* 36 Hun (N. Y.) 460; *Rowe* v. *Cockrell,* Bailey's Eq. (S. C.) 126; *Cook* v. *Cook,* 24 S. C. 206.

3. In this case Casto rendered the service upon a contract of lease made with the heir, but the lease, not being for the benefit of the estate, was void as against it.   *Casto* v. *Murray,* 47 Or. 57 (81 Pac. 388, 883) ; *Dutcher* v. *Dutcher,* 88 Hun (N. Y.) 221 (34 N. Y. Supp. 653.)

4. The respondent, Casto, was not a stranger nor an intermeddler in caring for the horse.   His services will be deemed to have been rendered at the request of Emma Murray for the benefit of the estate.   As said in *Gove* v. *Island City M. & M. Co.,* 19 Or. 363 (24 Pac. 521), when one performs service for another on a special contract, and for any reason, except voluntary abandonment, fails to fully comply with his contract, and the service has been of value to him for whom it was rendered, he may recover the reasonable value of such service.   *Steeples* v. *Newton,* 7 Or. 110 (33 Am. Rep. 705) ; *Todd* v. *Huntington,* 13 Or. 9 (4 Pac. 295.)

5. And he was entitled to compensation from Emma Murray for the value of his services, and she was entitled to be reimbursed therefor out of the estate by the administrator when appointed.   11 Am. & Eng. Enc. Law (2 ed.) 1234; *Roberts* v. *Rogers,* 28 Miss 152 (61 Am. Dec. 542) ; *Branham* v. *Commonwealth,* 7 J. J. Marsh (Ky.) 190; *Todd* v. *Martin,* 104 Cal. 18 (37 Pac. 872).

6. However, the claim of a creditor arising upon the contract of the administrator is enforceable against him personally and not ordinarily against the estate, and, if a proper item of expense, will be allowed to the administrator out of the estate.   *Sturgis* v. *Sturgis,* 51 Or. 18 (93 Pac. 696: 15 L. R. A. (N. S.) 1034.)

7. The statute requiring claims to be presented to the

administrator within six months from the publication of the notice to creditors, only postpones claims not presented within that time until the payment of those so presented. Section 1159, B. & C. Comp.

8. But the status of a liability upon the administrator's own contract for the benefit of the estate is very different from that of a debt created by the decedent in his lifetime and need not be presented to the estate at all by the creditor, being a preferred claim in favor of the administrator in the settlement of the estate. Section 1217, B. & C. Comp. Although Casto's remedy was upon the personal liability of the administrator and not against the estate, yet there is an exception to this general rule as in case of a claim for funeral expenses or care of live stock, or in case of the insolvency of the administrator, to which might be added the removal of the administrator beyond the jurisdiction of the court. 11 Am. & Eng. Enc. Law (2 ed.) 937; *Baker* v. *Baker*, Bailey's Eq. (S. C.) 165; *In re Galland's Estate*, 92 Cal. 293 (28 Pac. 287) ; *Donald* v. *McWhorter*, 44 Miss. 124; *Farley* v. *Hord*, 45 Miss 96. And in such a case the creditor may be allowed to take the place of the administrator and be paid out of the estate to the same extent.

9. The sureties by their brief contend for the first time that this proceeding is at law, and that they were entitled to a trial by jury in the circuit court. But it is too late to raise that question. Furthermore, what has been said as to the form of the proceeding applies to this objection, also. The proceeding was not at law, and the validity of the claim of Casto was tried out as incident to the accounting. The sureties tendered the issue and are bound by the result.

We have examined the evidence as to the amount and character of the service rendered by Casto in the care of the horse, as well as the value thereof, and find that it justifies the findings of the circuit court thereon.

10. The circuit court, after settling the account of the former administratrix as to the amount of money necessary to pay the debts due from the estate, directed judgment against the sureties, Herren and Becker, for the amount thereof. This, we think, was error. This is not an action on the undertaking, but a proceeding to settle the account of the former administratrix, to which the sureties are necessary parties. *Herren's Estate,* 40 Or. 90 (66 Pac. 688.) The probate court does not have general equitable jurisdiction with power to grant full relief, but only such as relates to the administration of the estate. It has no jurisdiction of an action on the undertaking, and no such relief is asked. Therefore the decree of the lower court will be reversed in so far as it is a personal judgment against Herren and Becker. It is further adjudged and decreed that at the time of her death there was $4,000 in money, the property of the estate of William Murray, deceased, unaccounted for by Emma Murray as administratrix of said estate; that, as suggested herein, she being the sole heir, the sureties on her undertaking should not be called upon to account for more than sufficient to pay the debts and expenses of administration; that the debts of the estate established in this proceeding amount to $511.71, with interest at 6 per cent per annum from October 31, 1905. It is further ordered that the cause be remanded to the circuit court, and by it to the county court, with direction to settle the account of the former administratrix by adjudging that the sum of $4,000 of the said estate that came into her hands is due the estate thereon; that it ascertain the amount of money that will be required to pay the debts of said estate and the expense of administration, which shall be the amount to be collected upon the undertaking of the said Emma Murray, administratrix, in case the remainder of said $4,000 has been properly distributed to the heir; that the matter of the attorney's fees allowed by the circuit court

to the administrator *de bonis non* is not in any way involved in this proceeding.

It is allowable by the county court as other items of expense are allowed, and not as an incident of this proceeding. The appellants will recover costs and disbursements in this court, and the respondents will recover costs and disbursements in the circuit and county court.

REVERSED.

Argued March 10, decided March 29. rehearing denied April 12, 1910.