Argued November 6; reversed November 21, 1933

IN RE MEAD'S ESTATE
IN RE FIRST & FARMERS NATIONAL BANK
OF LUVERNE, MINN.
(26 P. (2d) 1103)

*Elmer Johnson,* of Portland, for appellant.

*Frank Holmes* and *Eugene E. Marsh,* both of Mc-Minnville (Frank Holmes and Vinton & Marsh, all of McMinnville, on the brief), for respondent.

BAILEY, J. This proceeding was instituted in July, 1930, in the county court of Yamhill county, Oregon, by the First & Farmers National Bank of Luverne, Minnesota, by the filing of a petition in the estate of Volney C. Mead, deceased, to require the administratrix thereof to pay two claims filed by the First National Bank of Luverne, Minnesota, against said estate.

Volney C. Mead died intestate in Yamhill county, Oregon, on November 8, 1917, and on December 8, 1917, his widow, Alice I. Mead, was appointed administratrix of his estate. On December 10 of that year she filed an inventory and appraisal showing the value of that estate to be $53,314.72.

In February, 1918, the First National Bank of Luverne, Minnesota, presented to the administratrix

of the estate duly verified claims against the estate based on two promissory notes made, executed and delivered by the decedent to the claimant. These notes were dated February 16, 1917, and June 30, 1917, and were for $4,500 and $1,000 respectively, with interest at the rate of seven per cent per annum. Nothing had been paid on principal or interest of either of these notes at the time of the presentation of the claims. These claims were not filed by the administratrix with the court until October 8, 1924, and when filed contained no endorsement as to their approval or disallowance. However, prior to the filing of these claims with the court the administratrix had paid thereon the sum of $3,800 to be applied on principal and accrued interest, and in several of her reports had recognized the validity of the claims and stated that they had been approved.

The First National Bank became involved in difficulties and in 1925 the First & Farmers National Bank, petitioner herein, was organized and took over a large part of the assets of the First National Bank, including these notes and claims.

In the annual report filed by the administratrix on February 28, 1928, and which covered the period from the last report on September 30, 1924, it was stated that the cash received was in excess of $23,000 and the total disbursements were in excess of $20,000, leaving a balance of $2,739.40. This report stated that all the claims which had been presented against the estate had been paid, "except the claim of the First National Bank of Luverne, Minnesota, of the balance of the sum of about $3,000, which has been disallowed". This is the first and only intimation in any of the reports of the administratrix as to disallowance of the claim, and

there is nothing to indicate the time or ground of the disallowance.

According to her reports, the administratrix received from the estate up to the time of her report on September 30, 1924, the sum of $8,620 for her support and maintenance, and between the time of that report and the one filed on February 28, 1928, she received additionally an aggregate of $4,500.

At the time the notes and claims here in controversy were taken over by the First & Farmers National Bank from the First National Bank, the transfer was made by a general assignment, and on July 15, 1930, a special assignment of the claims and the notes was made from the old to the new bank. A few days later this proceeding was filed, alleging the filing of the claims, the allowance thereof, the value of the estate as shown by the inventory and appraisal, the amounts paid on the notes, the assignment of said claims to the First & Farmers National Bank, the withdrawal by the administratrix subsequent to December 10, 1918, which was one year after the date of the filing of the inventory, of large sums from the estate, without right or authority, and the unlawful appropriation of the same to her own use; and asking for an order requiring her to pay the balance of the bank's claims.

To this petition the administratrix filed an answer in which the execution of the notes was admitted, as well as the presentation of the claims and the payment of $3,800 thereon. She further admitted that for more than nine years the administratrix had withdrawn from the estate $100 a month for her own use.

Eight affirmative defenses were set forth, which are in substance as follows: (1) that the notes were made for the accommodation of Mr. LaDue, president

of the bank; (2) that the claims were neither allowed nor disallowed and that payment had been made in ignorance of the illegality of the same, that thereafter the administratrix had disallowed the claims and that they were barred by the statute of limitations; (3) that pursuant to the order of the court dated May 3, 1918, Mrs. Mead had been allowed $100 per month for maintenance and support, and for more than nine years thereafter had withdrawn such allowance with the knowledge of the officers of the bank, who should be estopped from alleging or claiming that such withdrawals were unlawful; (4) that the officers of the bank had organized the Broadmead Land Company which had bought a farm in Yamhill and Polk counties and had employed Volney C. Mead to manage it; that the company was owing Mead $14,000 at his death, as evidenced by a note payable to him, and that petitioner had agreed to limit the payment of its claims to the money realized on that note; (5 and 6) that the notes and claims were not taken by petitioner in due course, but with knowledge that the claims had been disallowed. The seventh defense is that after the probate proceedings had been instituted in the state of Oregon an ancillary administration was had in South Dakota, where there was sufficient money in the estate to pay petitioner's claim, and that the claim should have been presented in that proceeding. The eighth defense is that there are certain outstanding claims owing to the estate which are not yet due and payable, and, in the event the petitioner's claims are allowed, the proceedings should be abated until the collection of such outstanding claims.

The affirmative matter in the answers was put in issue by proper denials. Thereafter the attorney for

the claimant by letter notified the attorney for the administratrix that the claims of the First & Farmers National Bank had been assigned to the Luverne Holding Company, a corporation, and thereupon a motion was made by the administratrix to dismiss the petition of the First & Farmers National Bank, on the ground that the bank had become insolvent and was in the hands of the comptroller of the currency, and that the officers and attorneys of said bank no longer had any power to proceed, and for the further reason, as appears in the letter of the attorney for the petitioner, that "said petitioner no longer has any interest in the alleged claim set forth in the petition herein and there now is no proceeding in this court by said First & Farmers National Bank of Luverne, Minnesota, the petitioner". To this motion is attached a copy of the letter of the attorney referring to the assignment to the Luverne Holding Company. Thereupon the county court dismissed the proceedings, from which order an appeal was taken to the circuit court for Yamhill county.

The notice of appeal from the order dismissing the proceedings in the county court is almost identical in wording with the notice of appeal subsequently given and which is involved on this appeal, with the exception of the date of the order or judgment from which the appeal is taken. This notice gave the name of the court in which the order was entered, and was entitled: "In the Matter of the Estate of Volney C. Mead, Deceased." The paper was designated as the "Petition of First & Farmers National Bank of Luverne, for Order requiring Administratrix to pay claims". It was addressed to the administratrix and her attorney and stated that the Luverne Holding Company,

"appellant herein", was a corporation and that after the filing of the petition by the First & Farmers National Bank of Luverne in the above matter for an order of the court requiring the administratrix to pay its claims, and while said petition was pending, on or about November 19, 1930, said bank had assigned and transferred to the Luverne Holding Company all of its rights in and to said claims and the notes on which the claims were based, and that the Luverne Holding Company was the owner and holder of said claims and notes. It is then stated in the notice of appeal that "said Luverne Holding Company in the name of said First & Farmers National Bank of Luverne hereby appeals to the circuit court of the state of Oregon within and for the county of Yamhill" from the certain judgment and decree entered in the county court dismissing the petition and rejecting and disallowing the claims; and that the Luverne Holding Company takes and will prosecute the appeal in the name of the petitioner, the First & Farmers National Bank. This notice is signed by Elmer Johnson as attorney for the Luverne Holding Company.

A motion was filed by the administratrix to dismiss this appeal, in which motion fifteen reasons are assigned, among which is that no notice of appeal had been filed by the First & Farmers National Bank. Other reasons had to do with the filing of the transcript, and stated that the attempted appeal was not made by any party to the proceeding; that the Luverne Holding Company was not a party to the proceeding and that said appeal was being prosecuted by that company. The circuit court denied the motion to dismiss, and held that the Luverne Holding Company might prosecute the proceeding to a final determina-

tion in the name of the original petitioner, the First & Farmers National Bank of Luverne, and that the county court committed error in dismissing said proceeding and attempting to reject the claims of the petitioner. The case was remanded to the county court for further proceedings.

Thereafter a hearing was had before the county court, which in special findings of fact found that there was not sufficient evidence as to the consideration of said notes or the amounts due thereon, and that the claims were barred by the statute of limitations. Based thereon an order was made disallowing the claims, dismissing the petition and entering judgment against the Luverne Holding Company and its attorney, and in favor of the administratrix, for costs and disbursements. From this order another appeal was taken to the circuit court for Yamhill county, which was substantially in the same language as the first appeal above described, with the exception of the designation of the order or judgment from which the appeal was taken.

An undertaking on appeal executed by the Luverne Holding Company and a surety company authorized to do business in this state was, on May 14, 1932, served upon the attorney for the administratrix and filed with the clerk of the court. In this undertaking are recited facts similar to those in the notice of appeal.

On May 18, 1932, the respondent filed exceptions to the surety and on May 28, 1932, the appellant procured an order from the county court designating June 2, 1932, as the time for the surety to appear and justify. Later, on June 2 of the same year, another order was obtained fixing June 7, 1932, as the time for the surety to appear and justify. Notices of these

orders fixing the time for the surety to justify were served by the attorney for claimant by mailing them at Portland, addressed to the attorney for the administratrix at McMinnville, Oregon, the notice of the first hearing being mailed on May 28, 1932, and the second one on June 3. On June 7, 1932, the surety appeared and justified, but no one was, at that time, present to represent the estate. On June 11, 1932, the appellant filed in the circuit court of Oregon for Yamhill county a transcript on appeal which included certified copies of the findings and order of the county court, the notice of appeal and undertaking on appeal, and, on the same day, served upon the attorney for the administratrix a copy of said transcript. This transcript refers to the exceptions made by the administratrix to the surety, the appearance of the surety, the justification of the latter and the final approval of the undertaking by the county judge.

Some time in August, 1932, the administratrix filed a motion to dismiss the appeal, assigning as reasons therefor the following: (1) That exceptions had been filed to the sufficiency of the surety and of the undertaking and that the appellant had failed and neglected to have the surety justify; (2) that the Luverne Holding Company had no right or authority to appeal from the order of the county court because the claim was prosecuted in the county court under the provisions of section 11-504, Oregon Code 1930, and that such proceeding was special and not such suit or action as referred to by section 1-301, authorizing a suit or action to be prosecuted by an assignee; (3) that the original pleadings were not annexed to any transcript; (4) that the transcript of testimony was not certified by any certificate of the county judge or of the clerk

of the court; (5) that the exhibits were not certified by the county judge; (6) that the appeal had been abandoned; (7) that the appeal had never been perfected; and (8) that no transcript was filed within the time provided by law.

■ In order better to consider these various questions it might be well to determine first the character of this proceeding. Although the appellant contends that the proceedings were brought pursuant to section 11-703, Oregon Code 1930, for an order requiring the administratrix to pay its claims, nevertheless issue was joined on the question of whether or not the claims were valid, and a great amount of testimony was taken before the court and by deposition, on this question. At the time this proceeding was brought the court had not yet passed upon the validity of these claims, nor had the administratrix endorsed upon them the words "examined and approved" or "examined and rejected", but she had, pursuant to section 1241, Or. L., at first filed with the court statements that the claims had been presented and had been allowed, and later filed a statement that the balance of the two claims in question had been disallowed. When issue of fact had been made by the pleadings as to the validity of these claims, it was incumbent upon the claimant to produce evidence to support its claims, and, had the claimant failed to do this, it would have been the duty of the court to disallow the same: *Re Chambers' Estate,* 38 Or. 131 (62 P. 1013). The claimant recognized this and did offer an abundance of evidence to prove the consideration for the notes, the balance due thereon and the assignment of the notes and of the claims from the First National Bank to the First & Farmers National Bank and from the latter bank to the Luverne Holding Company.

■■ The county court acts judicially and is not bound to approve a claim simply because the same has been allowed by the administrator. When objection is made to the allowance of a claim it becomes the duty of the court to determine its validity as in other litigated controversies: *Re Chambers' Estate,* supra. The administrator in allowing a claim acts as an auditor and not in a judicial capacity. Before he allows a claim he must be satisfied of the justness of the claim and that it is not barred by the statute of limitations. To determine these questions he may demand the written evidence of any claim presented: *Re Chambers' Estate,* supra.

■ The record before us fails to show any order of the probate court approving these claims or the various reports of the administratrix in which she states that these claims had been allowed by her, or the payments made by her on such claims. Even if the court had, on the *ex parte* application of the administratrix, authorized these payments, it still retained jurisdiction to disallow the claims when their validity was later questioned: 24 C. J. 379, §§ 1058, 1059.

■ The validity of these claims was made an issue by the pleadings in the county court. The claimant did not, after the claims were denied by the administratrix in her answer to its petition, base its right to an order of the court requiring the administratrix to pay its claims solely on any approval of the administratrix, but sought to establish the validity of the claims by proof. In view of the procedure adopted by the county court and the parties to this proceeding, we hold that this proceeding amounted, in effect, to a presentation of its claims by the petitioner to the county court for allowance, and that it is governed by section 11-504, Oregon Code 1930.

■ When a claim against an estate is denied or rejected by the administrator and it is presented to the county court for allowance the court has power to hear and determine the claim in a summary manner.

"In the trial of a claim which has been presented to and rejected by an executor or administrator, the proceedings are purely legal in their nature and are not equitable and the order made, either allowing or rejecting the claim, is expressly given 'the force and effect of a judgment'. The statute refers to the proceedings as an action, and when the judgment is entered it has the force and effect of a verdict: Section 2-503, Oregon Code 1930. That section provides that 'the findings of the court upon the facts shall be deemed a verdict'." Bannon v. Thompson, 136 Or. 311 (298 P. 907).

See, also: *Pruitt v. Muldrick,* 39 Or. 353 (65 P. 20); *Wilkes v. Cornelius,* 21 Or. 341 (23 P. 473); Id., 21 Or. 348 (28 P. 135); *Johnston v. Shofner,* 23 Or. 111 (31 P. 254).

"It is upon the refusal of the executor or administrator to allow the claim or demand that the statute (section 1134) provides that the county court, after notice has been given, may proceed to hear and determine in a summary manner such claim or demand against the estate. When this is done, and a party is dissatisfied with the judgment order allowing or rejecting such claim, and has appealed from it, what possible objection can there be to the circuit court trying the issues according to legal principles as is done in like cases? Why subject the party when the obligation is legal, and the court presided over by a trained lawyer capable of instructing the jury upon the law in the premises, to the slow and tedious, expensive and cumbrous, method of taking depositions or reducing the evidence to writing? We see no reason for it, and think the case is controlled by Wilkes v. Cornelius, supra." Johnston v. Shofner, 23 Or. 111 (31 P. 254).

■ The trial in the circuit court on an appeal from the order of the county court rejecting a claim is not confined to an examination of the transcript of the proceedings in the county court, as is the case on appeal from many other orders of the county court in probate matters. On such appeals from the order of the county court rejecting a claim the matters in issue are tried *de novo* as any law action in the circuit court is tried: *Wilkes v. Cornelius,* supra, and *Johnston v. Shofner,* supra.

■ The statute specifically gives to the claimant whose claim has been denied by the county court a right to appeal to the circuit court: Section 11-504, Oregon Code 1930. There is, however, no statute specifically granting to the claimant a right to appeal from an order of the county court entered pursuant to section 11-703, Oregon Code 1930, refusing to order the administrator to pay a claim. Such an order, it would appear, would not be final, as the claimant whose claim had been allowed would not be precluded from later making a similar request, and upon the final accounting by the administrator would be entitled to have his claim paid in full, if there were sufficient funds in the estate to pay the expenses of administration and all claims against the estate.

■ This court is committed to the doctrine that after an action or suit has been commenced no substitution is required except in case of death of a party to the litigation. When, as in this instance, a party to an action has assigned all of its interest in the matter involved in litigation, the assignee is authorized to continue the proceedings in the name of the assignor, and may appeal, in the name of the assignor, from the judgment rendered therein against his assignor:

*Meyers v. Hot Lake Sanatorium Co.,* 82 Or. 587 (161 P. 697); *Phegley v. Swender Co.,* 133 Or. 146 (289 P. 500); *In re Waters of Deschutes River,* 134 Or. 623, 702 (286 P. 563, 294 P. 1049).

■ If the proceeding may be continued by the assignee in the name of the assignor, an appellate court should not dismiss an appeal because the notice of appeal states more than is necessary: i. e., that the claim involved in the proceedings has been assigned and that the assignee appeals in the name of the assignor. The notice of appeal from the county court to the circuit court stated that the claims and notes involved in the proceedings had been assigned by the petitioner, First & Farmers National Bank, to the Luverne Holding Company and that the ''Luverne Holding Company in the name of said First & Farmers National Bank of Luverne hereby appeals to the circuit court of the state of Oregon within and for the county of Yamhill'' from a certain order and decree of the county court for Yamhill county.

■ There is ample evidence in the record to prove the assignment from the First & Farmers National Bank to the Luverne Holding Company. Moreover, the administratrix, relying on the information contained in the letter from the attorney for the First & Farmers National Bank, and later attorney for the Luverne Holding Company, that the claims and notes had been so assigned, moved to dismiss the proceeding instituted by the First & Farmers National Bank in the county court, designating such assignment as one of her reasons for asking a dismissal. She cannot now be heard to question the assignment.

Section 7-503, Oregon Code 1930, provides that:

''If the appeal is not taken at the time the decision, order, judgment or decree is rendered or given, then

the party desiring to appeal may cause a notice, signed by himself or attorney, to be served on such adverse party or parties as have appeared in the action or suit, or upon his or their attorney, at any place where he or they may be found, and file the original with proof of service indorsed thereon, with the clerk of the court in which the judgment, decree or order is entered. Such notice shall be sufficient if it contains the title of the cause, the names of the parties and notifies the adverse party or his attorney that an appeal is taken to the supreme or circuit court, as the case may be, from the judgment, order or decree, or some specified part thereof.''

In the case at bar the Luverne Holding Company desired to appeal and it caused a notice, signed by its attorney, to be served on the attorney for the adverse party. That notice contained the title of the court and cause and names of the parties and notified the attorney for the adverse party that an appeal was taken by the Luverne Holding Company in the name of its assignor to the circuit court from a certain order of the county court. In other words, the Luverne Holding Company did what this court has often held a party situated as was the Luverne Holding Company has a right to do. It set forth the exact facts in the matter and how the appeal was being taken. The notice of appeal here involved is, as already stated, in language almost identical with that of a former notice of appeal in the same proceeding, the sufficiency of which notice was attacked by the administratrix. The circuit court, however, held that the former notice was sufficient.

After the administratrix excepted to the sufficiency of the undertaking and of the surety the appellant served notice upon her of the time when and place where the surety would appear and justify. These notices were not served upon the administratrix or her attorney five days or more in advance of the time of

the hearing, as required by section 4-110, Oregon Code 1930. The surety, however, did appear and justify on June 7, 1932, and four days later a copy of the transcript on appeal showing that the surety had justified was served on the attorney for the administratrix. No motion to dismiss the appeal was filed until some time in August, more than fifty days after the attorney for the administratrix had knowledge of what had been done.

The undertaking was signed by a surety company authorized to do business in the state of Oregon and there is no contention now made by the administratrix as to the sufficiency of the surety or of the undertaking. In the case of *Iltz v. Krieger,* 104 Or. 59 (202 P. 409, 206 P. 550), the respondent moved to dismiss the appeal because the surety had not justified within the time provided by law. The court held that the justification within the time required by law was not jurisdictional and that since the respondent had delayed more than forty days after having knowledge of the appellant's failure to comply with the statute and since such failure was not jurisdictional, the respondent had waived the same. The only interest the respondent has is to see that the undertaking is sufficient in form and that the surety is financially responsible. The sole requirement of a surety company authorized to do business in this state, when it is called upon to justify, is to exhibit the certificate of authority to do business in this state issued to it by the insurance commissioner, or a certified copy thereof: Section 46-1402, subdivision 4, Oregon Code 1930.

On June 11, 1932, certified copies of the findings and order of the county court, the notice of appeal and undertaking on appeal were filed by the appellant with the clerk of the circuit court. Thereafter and prior

to the order of the circuit court dismissing the appeal the original pleadings and other documents in the county court pertaining to the matters involved on appeal were filed in the circuit court. As this is an appeal from a judgment of a county court, it was not necessary to certify from the county court to the circuit court the transcript of testimony taken and the exhibits introduced in the county court: *Johnston v. Shofner,* supra. The circuit court acquired jurisdiction of the proceedings upon the filing in the circuit court, within the time specified by law, of the transcript above mentioned, and in case any other documents were needed by the circuit court they could be procured by order on the county clerk, who has custody of all the files of the county and circuit courts.

The other grounds assigned for dismissing the appeal from the county court to the circuit court are based on the assumption that the proceeding in the county court was one in equity and not at law, and therefore need not be further considered. The appeal was properly taken from the county court to the circuit court, and the latter court erred in dismissing it.

The appellant sent to this court what purported to be a transcript of all the evidence taken and exhibits introduced in the county court, and requests that we enter a judgment herein in favor of the claimant. This we cannot do, because the merits of the case have not yet been passed upon by the circuit court, which must try the case *de novo* in the same manner, so far as the evidence is concerned, that actions at law begun in the circuit court are tried.

The judgment of the circuit court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

BEAN, BELT and CAMPBELL, JJ., concur.